IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REBECCA EBAUGH,
    *Plaintiff*,

v.

THE MAYOR AND CITY COUNCIL OF
BALTIMORE,
    *Defendant*.

Civil Action No. ELH-20-663

**MEMORANDUM OPINION**

In a Second Amended Complaint (ECF 33), plaintiff Rebecca Ebaugh, a former employee of the Baltimore City Department of Recreation and Parks ("BCDRP"), filed suit against the Mayor and City Council of Baltimore (the "City"), defendant. ECF 33 ("Second Amended Complaint" or "SAC");[1] *see also* ECF 1 ("Complaint"); ECF 18 ("Amended Complaint"). Plaintiff, alleges, *inter alia*, that she was subjected to discrimination and retaliation by her employer on the basis of race, sex, age, and disability.

The Second Amended Complaint contains six counts: "Disability Discrimination, Disparate Treatment, Failure to Accommodate, Retaliation, and Hostile Work Environment," in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (Count One); "Failure to Accommodate, Disparate Treatment, Retaliation, Hostile Work Environment," in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Count Two); "Discriminatory Demotion, Disparate Treatment, and Retaliation," in violation of Md. Code (2014 Repl. Vol., 2017 Supp.), §§ 20-606, 20-901 of the State Government Article (Count Three);

---

[1] Plaintiff previously sued BCDRP as well as Reginald Moore and Ciara Harris. *See* ECF 1 (Complaint); ECF 18 (Amended Complaint). However, they are not named as defendants in the SAC.

"Disparate Treatment," in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Count Four); "Disparate Treatment," in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* (Count Five); and "Age Discrimination" in violation of the Age Discrimination, in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (Count Six). Plaintiff seeks injunctive relief as well as monetary compensation. The SAC is supported by five exhibits. ECF 33 at 32-44.

The City has moved to dismiss Counts Four and Six of the suit under Fed. R. Civ. P. 12(b)(6), for failure to exhaust administrative remedies. ECF 36. The motion is supported by a memorandum. ECF 36-1 (collectively, the "Motion"). Ebaugh opposes the Motion. ECF 39. The City replied. ECF 40.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, in part, and deny it, in part.

## I. Background[2]

When the SAC was filed in October 2020, Ebaugh was a "65-year-old Caucasian female." ECF 33, ¶ 16. She began work at BCDRP on July 21, 2003, as a "Special Assistant to the Director," with an annual salary of $37,120.00. *Id.* ¶ 17. According to Ebaugh, she "was a valued employee and received accolades for her outstanding performance." *Id.* ¶ 18. In the Fall of 2016, Ciara Harris, "an African American female," was hired "as Executive Assistant to the Director" and became Ebaugh's "direct supervisor." *Id.* ¶ 20.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Further, the Court may consider documents attached to the SAC, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The Court cites to the electronic pagination, which does not always correspond to the page number imprinted on the particular submission.

Plaintiff sustained an injury on January 13, 2017, while securing the building prior to leaving for a holiday weekend. *Id.* ¶ 21. As she was pulling a "metal bar lock" down over a door, she fell backwards and "struck the back of her head on the concrete floor." *Id.* ¶ 22. Plaintiff was subsequently diagnosed with a concussion. *Id.* ¶ 23. Moreover, she had ongoing medical issues related to "cranial cervical trauma and corresponding traumatic brain injury (TBI)." *Id.* ¶ 26.

Thereafter, plaintiff "was placed on out of work status by the Department for Business and Employee Health Services for Baltimore City…from January 13, 2017 until she was authorized to return to work [on a part-time basis] on May 8, 2017." *Id.* ¶ 28. She returned to work on a full-time basis on June 5, 2017. *Id.* ¶ 29. However, because of "ongoing headaches and symptomology," Ebaugh was still subject to various restrictions, including the "ability to change positions as needed for comfort and limit screen time." *Id.*

In July 2017, the Director of BCDRP was replaced by Director Reginald Moore, "an African American male." *Id.* ¶ 30. Harris continued to act as plaintiff's direct supervisor. *Id.* ¶ 32. Plaintiff alleges that Harris and Moore were aware that plaintiff was recovering from a work-related injury and had certain limitations as a result. *Id.* ¶ 33.

On or about July 7, 2017, Harris gave plaintiff the responsibility "to review and screen Director Moore's numerous emails." *Id.* ¶ 35. According to plaintiff, this "additional task…nearly doubled" her "computer screen time." *Id.* Plaintiff's work limitations were amended on August 11, 2017, "to include 'screen time as tolerated.'" *Id.* ¶ 38. And, plaintiff asserts that Harris was "well aware" of plaintiff's TBI (*id.* ¶ 36), yet BCDRP "did nothing to reasonably accommodate Plaintiff's cognitive work limitations and/or reassignment of the task of reviewing and responding to the Director's email[s] to another employee." *Id.* ¶ 39.

Throughout this time, plaintiff alleges that she "made repeated requests to have weekly meetings with" Harris and Moore and "requested specific instructions" from them as to their expectations for her. *Id.* ¶ 44. But, she avers, Harris and Moore "endeavored to isolate Plaintiff in an effort to set Plaintiff up for failure." *Id.*

Harris issued a "Performance Warning" to plaintiff on October 13, 2017, which "cited issues with Plaintiff's meeting agendas, botched calendar issues, and unanswered emails." *Id.* ¶ 45. However, plaintiff alleges that Harris and Moore ignored her requests to speak about improving her performance. *Id.* ¶ 47. In sum, plaintiff avers that Harris and Moore "created an environment where Plaintiff was kept in a perpetual state of anxiety, suspicion, and fear of losing her job." *Id.* ¶ 53.

In January 2018, plaintiff initiated the process to request an accommodation from the "City's ADA Coordinator" for her ongoing health issues. *Id.* ¶¶ 59, 62. Plaintiff's submissions included a form completed by Kari Kindschi, M.D., who stated that plaintiff's condition affected "the speed with which she can complete tasks." *Id.* ¶ 69. She also provided a form completed by Dr. Kenneth Diehl. *Id.* ¶ 71. He opined that plaintiff's "functional capacities appeared intact," but she should receive accommodation because of her injury. *Id.* ¶ 72.

The ADA Coordinator responded to plaintiff's request on March 19, 2018, offering plaintiff a "job reassignment to a new position" that had an annual salary of $32,202. *Id.* ¶ 74. According to plaintiff, this was less than her starting salary in 2003 and "a significant reduction from her current salary of $55,979." *Id.* ¶ 75.

In the interim, on February 7, 2018, plaintiff was suspended for one day without pay, effective February 8, 2018, based on alleged poor performance. *Id.* ¶ 65. Although plaintiff was

advised that a work improvement plan would be issued, *id.* ¶ 66, no work performance plan was ever provided. *Id.* ¶ 67.

On March 19, 2018, plaintiff filed a Charge of Discrimination ("First Charge") with the Baltimore City Community Relations Commission ("BCRC") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 8. As to the basis of discrimination, she checked the boxes for "Retaliation" and "Disability." *Id.* at 33. Plaintiff identified the earliest date of discrimination as October 13, 2017, and the most recent incident as March 19, 2018. *Id.* In the narrative portion of the Charge, Ebaugh averred, in part, *id.* at 33-34:

> I was hired by the Respondent on July 21, 2003. I am currently employed as a Special Assistant to the Director. I believe I have been discriminated against due to my Disability, in regard to my failure to accommodate, suspension, demotion and retaliation, which are violations of the Americans with Disabilities Act of 1990 and Article 4 of the Baltimore City Code. I believe this because:
>
> 1. On January 13, 2017, I suffered on-the-job injuries to my head, neck and back. I was returned to work on May 8, 2017, with the instruction that my time on the computer screen was to be limited. However, in July 2017, my duties were expanded and my screen time increased significantly.
>
> 2. On October 13, 2017, I received a Performance Warning, citing four "deficiencies," regarding my assigned tasks.
>
> 3. I subsequently asked my direct Supervisor, Ciara Harris (Chief of Staff) for modified job duties, as a reasonable accommodation to my disability. I provided supporting medical documentation. On February 8, 2018, I was suspended without pay for one day for issues related to my condition and its impact on my job performance.
>
> 4. On or about March 1, 2018, Ajeenah Green (Human Resources Practitioner) responded to my accommodation request by offering to reassign me to another position. This position is 14 grades lower than my current salary.
>
> 5. I submitted further medical documentation (along with an accommodation request) to the Respondents on March 2, 2018. On March 7, 2018, the Respondents informed me that the "reassignment" was actually an involuntary demotion.
>
> 6. On March 19, 2018, JoAnn Cason (ADA Coordinator) responded to my request by recommending three accommodations, including the transfer and demotion.

7. I believe the accommodations offered are not reasonable and that the Respondents have retaliated against me because I engaged in legally protected activity.

Thereafter, on March 21, 2018, plaintiff "was given a three-day suspension without pay following a disciplinary meeting." *Id.* ¶ 81. And, on March 29, 2018, plaintiff's "employment was terminated effective March 30, 2018." *Id.* ¶ 83. The termination letter stated that plaintiff was terminated because "'options with regard to [her] reasonable accommodation request' had been 'exhausted' since the alternative position had been declined by Plaintiff and because Plaintiff…was unable to 'perform critical job functions.'" *Id.* ¶ 83. According to plaintiff, she was replaced "by a younger African American male" who was "the only individual interviewed for this position and moved from Macon Georgia to accept this position." *Id.* ¶ 85. His salary "as a new hire" was $54,472.00. *Id.*

On April 3, 2018, plaintiff filed a second Charge of Discrimination with the BCRC and the EEOC ("Second Charge"). *Id.* ¶ 9. As to the basis of the claim of discrimination, she checked the box for "Retaliation." *Id.* at 36. She identified the earliest date of discrimination as March 19, 2018, and the most recent incident as March 30, 2018. *Id.* In the narrative portion of the Charge, plaintiff stated, *id.*:

> I was hired by the Respondent on July 21, 2003. My most recent job title was Special Assistant to the Director. I believe the Respondent has retaliated against me for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964 and Article 4 of the Baltimore City Code. I believe this because:
>
> 1. On March 19, 2018 I filed a complaint with the Community Relations Commission ("CRC") and the Equal Employment Opportunity Commission ("EEOC") against this same Respondent. I alleged that the Respondent refused to provide accommodations [for] my disability and retaliated because I requested them. The Respondent was subsequently served with that charge. On March 29, Ciara Harris (Deputy Director of Administration) informed me I was terminated, effective March 30, in part because I told the management staff that the accommodations they offered were not reasonable.

2. I believe the Respondents retaliated against me for filing my initial complaint, which is a protected activity under Article 4.

Thereafter, on June 8, 2018, plaintiff wrote a letter, addressed to the BCRC, referencing both of her Charges of Discrimination. *Id.* ¶ 10; *id.* at 38 ("June 8 Letter"). In the June 8 Letter, she wrote, *id.* at 38:

> Please MODIFY my above referenced Complaints to include the following allegations of discrimination:
>
> 1. RACE
> 2. SEX
> 3. AGE
>
> I thank you for your attention to this important matter. Please let me know if new or additional complaint forms are required to be completed.

In the EEOC's "Charge Detail Inquiry," the June 8 Letter was marked as received on June 13, 2018. *Id.* at 41.

The EEOC issued two Notice of Right to sue letters on February 27, 2020, authorizing plaintiff to file suit under Title I and Title V of the ADA, as well as Title VII of the Civil Rights Act of 1964. *Id.* at 43, 44; *see also* ECF 33, ¶ 11. Suit timely followed on March 11, 2020. ECF 1.

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Of course, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.

1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."

*Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

The exhibits attached to the SAC include the Charge of Discrimination dated March 19, 2018 ("First Charge"), ECF 33 at 32; the Charge of Discrimination dated April 3, 2018 ("Second Charge"), ECF 33 at 35; a "Letter to Amend Charges of Discrimination," dated June 8, 2018 ("June 8 Letter"), ECF 33 at 37; a "Charge Detail Inquiry" from the EEOC, ECF 33 at 39; and two Notice of Right to Sue letters, both dated February 27, 2020. ECF 33 at 41-43.

In resolving the Motion, I may consider the exhibits, as they are integral to the suit and referenced in the SAC. *See, e.g.*, *Webb v. Potomac Elec. Power Co.,* TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Hwy. Admin.*, JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

### III. Discussion

In Count Four, plaintiff asserts that she suffered disparate treatment on account of her race and sex, in violation of Title VII. ECF 33, ¶ 119. In particular, plaintiff alleges that when the City terminated her and hired a "younger, less qualified African American male" it was "motivated by racial and/or gender-based disfavor and animus against Plaintiff as a Caucasian female." *Id.* ¶ 120.

In Count Six, plaintiff alleges that she suffered "disparate treatment because of her age in violation of the ADEA" when the City treated her "less favorably" than the younger individual who the City hired to "replace" plaintiff. *Id.* ¶¶ 137, 138.

Defendant contends that plaintiff is "procedurally barred from bringing these two claims because she failed to allege these facts in her charging documents." ECF 36-1 at 5. Therefore, the City claims that plaintiff did not exhaust her administrative remedies.

To assert a claim under Title VII or the ADEA in federal court, a plaintiff must first exhaust her administrative remedies. *See Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843. 1851 (2019); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016); *Brandford v. Shannon-Baum Signs, Inc.*, 519 F. App'x. 817, 819 (4th Cir. 2013) (ADEA); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009) (ADEA and Title VII). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency, usually within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, as to a deferral state, such as Maryland, a claim must be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

The Supreme Court recently determined that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Although a defendant may waive arguments related to administrative

exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The Fourth Circuit has admonished that the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Administrative exhaustion advances the complementary goals "of protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013). In particular, the exhaustion requirement "ensures that the employer is 'put on notice of the alleged violations' to facilitate out-of-court resolution[.]" *Stewart*, 912 F.3d at 699 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)).

Moreover, the administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Blog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has stated that a "'claim will ... typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and

13

benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156, 161 (4th Cir. 2018) (alterations in *Nnadozie*) (quoting *Chacko*, 429 F.3d at 509).

That said, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Federal courts may hear claims not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705; *Miles*, 429 F.3d at 491 (noting that EEOC charge "'does not strictly limit a ... suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination'") (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)).

Also of relevance here, to determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Evans*, 80 F.3d at 962–63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."). Intake questionnaires and letters submitted to the EEOC "cannot be read as part of [a plaintiff's] formal discrimination charge without contravening the purposes of Title VII." *Balas*, 711 F.3d at 408; *see Maddox-Nichols v. S. Md. Hosp., Inc.*, TDC-14-0243, 2014 WL 6609313, at *5 (D. Md. Nov. 19, 2014) ("The Fourth Circuit ... has adopted a rigid rule that letters, emails, and other submissions cannot be deemed to have effected an

amendment of the Charge; only inclusion of additional allegations on the face of the Charge form will count.").

In plaintiff's First Charge, she alleges that she was denied reasonable accommodation and subjected to retaliation because of her disability, in violation of the ADA and the Baltimore City Code. ECF 33 at 33-34. On the form, she checked the boxes for retaliation and disability as the basis for discrimination. The charge does not include any allegations as to race, sex, or age discrimination.

In the Second Charge, plaintiff claims that she was retaliated against and terminated for filing the First Charge, in violation of the ADA and Title VII. *Id.* at 36. As the basis for discrimination, plaintiff checked the box on the form only for retaliation.

About two months later, on June 8, 2018, plaintiff sent correspondence to BCRC. There, she asked to "modify" her charges to include allegations of discrimination based on race, sex, and age. *Id.* at 38. She did not include any factual allegations, however.

Given that the charges were not filed by a lawyer, I must construe them liberally. *Chacko*, 429 F.3d at 509. Moreover, the exhaustion inquiry depends not on the broad terms of the boxes on the EEOC charge but instead whether "reasonable investigation of [the plaintiff's] administrative charge would have uncovered the factual allegations set forth in formal litigation." *Chacko*, 429 F.3d at 512.

As stated, the Fourth Circuit has made perfectly clear that "[i]n any ... lawsuit alleging unlawful employment practices," courts "may *only* consider those allegations included in the EEOC charge" itself and may not consider letters submitted separate from the charge. *Balas*, 711 F.3d at 407 (emphasis added) (affirming district court decision declining to consider letters that plaintiff sent to the EEOC as part of her formal charge). Thus, in determining the scope of the

15

allegations properly before me, I cannot consider the allegations included in the letter of June 8, 2018, as part of plaintiff's "charge." *See Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (concluding that a letter referencing a retaliation claim that the plaintiff sent to the EEOC five months after filing her Charge did not cure the plaintiff's failure to allege retaliation in the Charge itself for purposes of administrative exhaustion); *Kelly v. Giant of Maryland LLC*, PX-18-2495, 2019 WL 2502289, at *4 (D. Md. June 17, 2019) (noting that plaintiff's "additional correspondence…does not, as a matter of law, constitute a subsequent amendment" to her EEOC charge); *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 439-40 (D. Md. 2013) (noting that "any document that is not part and parcel of the administrative charge cannot be considered by" the court, so plaintiff's arguments "regarding the intake questionnaire…are irrelevant").

Here, plaintiff explicitly referred to Title VII in the Second Charge. And, "reasonable investigation" of plaintiff's retaliation claim in the Second Charge likely would have "uncovered the factual allegations set forth in" the SAC as to her disparate treatment claim under Title VII. *Chacko*, 429 F.3d at 512. Thus, as to Count Four, plaintiff has satisfied the exhaustion requirement with respect to her Title VII claim.

However, there is nothing in either of the charges that would lead anyone investigating the charges to believe that plaintiff was asserting a claim of age discrimination. The Fourth Circuit has consistently opined that a plaintiff's claim exceeds the scope of the EEOC charge where the EEOC charge alleges one basis of discrimination and the litigant seeks to introduce another basis of discrimination. *Chacko*, 429 F.3d at 509.

In *Bryant*, 288 F.3d 124, for example, the Court found that where a plaintiff's EEOC charge alleged discrimination based on race, his claims in litigation based on color and sex discrimination were procedurally barred. *Id.* at 132–33. The Court reasoned, *id.* at 133: "Administrative

investigation of retaliation, and color and sex discrimination, however, could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination." As the Court said in *Chacko*, "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 509.

Similarly, neither of Ebaugh's charges make any mention of an age discrimination cause of action. Indeed, a reading of either Charge does not so much as hint that plaintiff sought to assert ADEA claims against the City. And, plaintiff's ADEA discrimination claim does not necessarily flow from her Title VII claim. *Cf. Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("[A]ge discrimination does not necessarily flow from sex discrimination and vice versa.").

Because administrative investigation of Ebaugh's age discrimination claim could not have reasonably been expected based on the content of either Charge, I shall grant the Motion only as to the ADEA claim, based on a failure to exhaust administrative remedies.

## IV. Conclusion

For the foregoing reasons, I shall grant the Motion, in part, and deny it, in part. In particular, I shall dismiss plaintiff's ADEA claim (Count Six). But, plaintiff may proceed with her Title VII claim under Count Four.

An Order follows, consistent with this Memorandum Opinion.

Date: June 23, 2021                              /s/
                                                 Ellen L. Hollander
                                                 United States District Judge